UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel Casanova

    v.                                                      Case No. 21-cv-851-PB

N.H. State Prison Corrections Officer
FNU Ramos et al.[1]

**REPORT AND RECOMMENDATION**

Daniel Casanova, who is incarcerated at the N.H. State Prison ("NHSP"), filed initial pleadings (Doc. Nos. 1, 2, 12, 13, 16, 17, 18, 26) in this case which, together, assert his claims in this action. Those pleadings and claims are here for preliminary review under LR 4.3(d)(1), 28 U.S.C. § 1915A, and 28 U.S.C. § 1915(e)(2). Also before the court are Mr. Casanova's three filings, each entitled, "Motion for Summary Judgment" (Doc. Nos. 13, 24, 28).

---

[1] Plaintiff filed another case in this court, Casanova v. Hanks, No. 21-cv-973-JL (D.N.H.), which was consolidated with the above-captioned case. In the pleadings filed in this consolidated case, Mr. Casanova has asserted claims against N.H. State Prison ("NHSP") Corrections Officer ("CO") Ramos (whose first name is unknown ("FNU")), NHSP Nurse Keith Larocque, N.H. Department of Corrections ("DOC") Director of Medical and Forensic Services Paula Mattis, DOC Commissioner Helen Hanks, and the State of New Hampshire. In addition, the court has construed Mr. Casanova's initial pleadings liberally as asserting claims against an unnamed Special Housing Unit CO ("SHU CO John Doe") and an unnamed NHSP Special Housing Unit Nurse ("SHU Nurse Jane Doe").

## **Background**

On the morning of October 15, 2021, Mr. Casanova was released from the NHSP Special Housing Unit ("SHU") and returned to H Block.  After he arrived at H Block, NHSP Corrections Officer ("CO") Ramos ordered Mr. Casanova to proceed to C Block or to seek protective custody.  Mr. Casanova refused that order.  CO Ramos then told Mr. Casanova to face the wall and put his arms behind his back for handcuffing.  Mr. Casanova alleges he complied with that order and that, while placing him in handcuffs, CO Ramos struck the wall next to his head several times and swore at him, using the "F-word."  Mr. Casanova swore back.  Mr. Casanova states that after he was handcuffed, CO Ramos reached down and lifted Mr. Casanova's feet "7 foot high," Doc. No. 1, at 1, and threw Mr. Casanova down forcefully.  The impact fractured Mr. Casanova's arm and caused other injuries.

CO Ramos and another officer then got Mr. Casanova up and walked him back to the SHU.  One of the officers asked Mr. Casanova why he was not walking normally.  Mr. Casanova responded that he could feel he had broken bones.

That day, unnamed SHU COs took Mr. Casanova to see a nurse on that unit.  The female nurse who looked at him on that date ("SHU Nurse Jane Doe") said it did not look like he had any broken bones, and that he was "fine."  Mr. Casanova alleges that when he saw the same nurse later that day at 8:00 p.m., he told

her he needed to go to a hospital for surgery for his injuries. He alleges that, after looking at him again through a cell window, SHU Nurse Jane Doe repeated that he did not have any broken bones, refused his request for further medical assistance, and swore at him, using the "F-word."

Mr. Casanova alleges he spent the next five days in the SHU in severe pain and unable to sleep, before his injuries were diagnosed and/or treated. He further alleges that one unnamed SHU officer ("SHU CO John Doe"), aware of Mr. Casanova's complaints, caused him further pain and/or injuries by pulling and twisting his arms through the cell slot door while taking him out of the cell at night, and, on one occasion, left him in the bathroom for fifteen hours.

On October 17-18, 2021, Mr. Casanova alleges, Nurse Keith Larocque noticed the bruises on his left arm and heard his complaints about having broken bones, but did not provide any further medical attention to Mr. Casanova. Rather, he alleges, Nurse Larocque swore at him and walked away in response to his complaints.

On or about October 19, 2021, a different nurse distributing medications on SHU, identified as Nurse Kasey, noticed Mr. Casanova's bruised left arm, asked him what had happened, and heard his explanation. Nurse Kasey then arranged for Mr. Casanova to be moved to the Medical Department. Doc.

3

No. 16.  Follow-up X-rays at a local hospital revealed that Mr. Casanova had a "mildly displaced" fracture of his left upper arm.  Doc. No. 13-1.  Mr. Casanova alleges that other x-rays revealed fractures in his back, spine, and/or waist.  Mr. Casanova underwent surgery to repair his fractured left arm on October 28, 2021.

In grievances and Inmate Request Slips ("IRSs") in November/December 2021 relating to his injuries and his severe pain that disrupted his sleep, Mr. Casanova asked the NHSP Medical Department to arrange for surgical repairs of the injuries in his back, waist, and/or spine.  On December 20, 2021, New Hampshire Department of Corrections ("DOC") Medical Director Paula Mattis responded to Mr. Casanova's December 15, 2021 grievance, stating that (DOC Chief Medical Officer) Dr. Thomas Groblewski had told Mr. Casanova on December 9, 2021, that his injuries could take time to heal, and that specialists at Concord Orthopedics who examined Mr. Casanova on December 13, 2021 "are not recommending surgery."  See Doc. No. 14, at 3. Director Mattis's December 21, 2021 response to his December 8, 2021 IRS further explains that she could find no record that any provider had recommended surgery for him.  Doc. No. 11, at 4. On January 4, 2022, Nurse Practitioner Deanna Benjamin answered Mr. Casanova's December 22, 2021 IRS -- which also complained of pain, disrupted sleep, and a need for surgery -- by stating that

4

he was scheduled for a physical therapy appointment on January 27, 2022; that he would be scheduled for a provider visit to evaluate his chronic back pain; that ibuprofen and Tylenol had been ordered for him; and that he could use his physical therapy appointment and sick call to discuss his problems and seek treatment. See Doc. No. 26-1, at 2.

The initial pleadings filed by Mr. Casanova (Doc. Nos. 1, 2, 12, 13, 16, 17, 18, 26) assert the following claims for damages and other relief:

> 1. On October 15, 2021, after striking the wall near Daniel Casanova's head and swearing at him, CO Ramos pulled Mr. Casanova's feet out from under him, while Mr. Casanova was handcuffed, and threw him to the ground forcefully, using excessive force against him in bad faith, maliciously or sadistically to cause harm, breaking Mr. Casanova's arm and causing other serious injuries:
>
>> a.   In violation of Mr. Casanova's Eighth Amendment rights, rendering CO Ramos liable under 42 U.S.C. § 1983; and
>>
>> b.   Rendering CO Ramos liable under New Hampshire law for the intentional torts of (i) assault and (ii) battery.
>
> 2. On October 15, 2021, SHU Nurse Jane Doe violated Daniel Casanova's Eighth Amendment rights, in that, with deliberate indifference to a substantial risk of serious harm, she refused his request for further medical attention and contributed to the delay in diagnosing and treating Mr. Casanova's fractured arm and severe pain, rendering her liable under 42 U.S.C. § 1983.
>
> 3. On October 17 and 18, 2021, Nurse Keith Larocque violated Daniel Casanova's Eighth Amendment rights, in that, with deliberate indifference to a substantial risk of serious harm, Nurse Larocque refused Mr. Casanova's request for further medical attention and contributed to the delay

5

in diagnosing and treating Mr. Casanova's fractured arm and severe pain, rendering Nurse Larocque liable under 42 U.S.C. § 1983.

4.   SHU CO John Doe violated Daniel Casanova's Eighth Amendment rights, in that, with deliberate indifference to a substantial risk of serious harm, SHU CO John Doe twisted Mr. Casanova's arms while removing him from his cell, knowing he was complaining of injuries and severe pain, on one or more occasions between October 15, 2021 and October 20, 2021, rendering that defendant liable under 42 U.S.C. § 1983.

5.    SHU CO John Doe violated Daniel Casanova's Eighth Amendment right not to be subjected to inhumane conditions of confinement, in that he left Mr. Casanova in the bathroom for an extended period of time (fifteen hours), rendering that defendant liable under 42 U.S.C. § 1983.

6.   Supervisory prison officials DOC Commissioner Helen Hanks and DOC Medical and Forensics Director Paula Mattis violated Daniel Casanova's Eighth Amendment rights, rendering them liable under 42 U.S.C. § 1983, in that:

   a.   Commissioner Hanks and Director Mattis denied Mr. Casanova's grievances asking for surgery for injuries to his waist, back, and spine; and

   b.   Commissioner Hanks and Director Mattis held supervisory authority, with respect to each officer and nurse named as a defendant in this action, making those supervisory officials responsible for their subordinates' misconduct alleged in Claims 1-5.

7.   The defendants are subject to criminal charges for the conduct underlying Claims 1-6.

## Discussion

I.   Preliminary Review

   A.   Standard

The court may dismiss claims asserted by a prisoner seeking relief from a government agency or officer if: the court lacks

6

subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A. To determine whether to dismiss a claim for failure to state a claim, the court strips away legal conclusions, takes as true the factual content in the complaint and inferences reasonably drawn from those facts, and considers whether the plaintiff has stated a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

    B.    <u>CO Ramos: 8th Am. Excessive Force (Claim 1(a))</u>

The Eighth Amendment prohibits COs from using excessive force against prisoners in bad faith, maliciously, and sadistically to cause harm. See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) ("whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). An Eighth Amendment excessive force claim "'has two components --

7

one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.'" Staples v. Gerry, 923 F.3d 7, 13 (1st Cir. 2019) (citations omitted). "The subjective prong turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (citations omitted). As to the objective prong, a prisoner must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," id. (internal quotation marks and citations omitted), an inmate need not prove a "'significant injury' in order to state an excessive force claim," Wilkins v. Gaddy, 559 U.S. 34, 36-37 (2020) (citation omitted).

> The "factors" that "are relevant to that ultimate determination" include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials," "the need for the application of force," "the relationship between the need and the amount of force that was used," "the extent of the injury inflicted," and "any efforts made to temper the severity of a forceful response."

Staples, 923 F.3d at 13 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Mr. Casanova's allegations summarized here as Claim 1(a) state an Eighth Amendment excessive force claim upon which relief can be granted, as to CO Ramos's use of force on October 15, 2021. In an Order issued this date, the court has directed

8

service of this matter on CO Ramos, in his individual capacity, and has directed CO Ramos to file an answer to Claim 1(a).

### C. CO Ramos: Assault & Battery (Claims 1(b)(i)- (ii))

The same factual allegations, and the alleged impact of CO Ramos's conduct on Mr. Casanova, give rise to actionable claims of the intentional torts of assault and battery under New Hampshire law. See Rand v. Town of Exeter, 976 F. Supp. 2d 65, 75 (D.N.H. 2013) ("A successful assault claim requires that '(1) the defendant . . . intended to cause harmful or offensive contact to the plaintiff, and (2) the plaintiff must have been put in imminent apprehension of such contact.'" (citation omitted)); id. at 75-76 ("A defendant may be held liable for battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" (citation omitted)).  In the Order issued this date, the court has directed service upon CO Ramos, in his individual capacity of this matter, and has ordered CO Ramos to file an answer to Claims 1(b)(i) and (ii).

D.  CO John Doe: 8th Am. Failure to Prevent Harm (Claim 4)

> [A] prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment "based on a failure to prevent harm" to the inmate only under two circumstances: "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and the prison official must have acted, or failed to act, with "deliberate indifference to inmate health or safety."

Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  To demonstrate deliberate indifference, a plaintiff must present evidence showing that the defendant prison official's conduct was purposeful and not merely negligent, see Farmer, 511 U.S. at 835, and that the official was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] that inference," id. at 837.

Mr. Casanova's allegations, summarized here as Claim 4, state an Eighth Amendment deliberate indifference claim as to SHU CO John Doe, for his failure to prevent harm to Mr. Casanova relating to his conduct in twisting and pulling Mr. Casanova's fractured arm.  As Mr. Casanova has not named that officer, however, the Order issued this date does not direct SHU CO John Doe to file a response to Claim 4 at this time.  Mr. Casanova may file a motion for discovery needed for the purpose of identifying SHU CO John Doe, or Mr. Casanova may seek to amend the complaint to name SHU CO John Doe and join him as a

defendant, in accordance with any applicable rules or orders issued in this case.

    E.    <u>Nurses: 8th Am. Medical Care (Claims 2, 3)</u>

The Eighth Amendment requires prison officials to provide humane conditions of confinement to prisoners, including necessary medical care for serious medical needs. See Farmer, 511 U.S. at 832. An Eighth Amendment medical care claim has both objective and subjective elements. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Where an alleged failure to treat a medical condition forms the basis of an inmate's claim, the objective component of the claim may be established by evidence of a medical need "'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016) (citation omitted). "The 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment." Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (citations omitted).

A showing of deliberate indifference to a substantial risk of serious harm satisfies the subjective prong of an Eighth Amendment claim. See Farmer, 511 U.S. at 834. An inmate pleading deliberate indifference must allege facts showing that

11

defendants were aware of circumstances that gave rise to an inference that a substantial risk of serious harm existed; that defendants drew the inference that such a risk existed; and that defendants, by act or omission, did not take reasonable steps to ameliorate the risk.  See id. at 828-29; Leite v. Bergeron, 911 F.3d 47, 52-53 (1st Cir. 2018).  Deliberate indifference may also be manifested by "'wanton disregard to a prisoner's needs . . . akin to criminal recklessness, requiring consciousness of impending harm, easily preventable."  Abernathy, 984 F.3d at 6 (citation omitted).

Mr. Casanova's allegations summarized here as Claims 2 and 3 state Eighth Amendment deliberate indifference claims upon which relief can be granted under 42 U.S.C. § 1983, as to SHU Nurse Jane Doe and Nurse Keith Larocque.  In the Order issued this date, the court has directed service upon Nurse Larocque, in his individual capacity, and has directed Nurse Larocque file an answer to Claim 3.

As Mr. Casanova has not named SHU Nurse Jane Doe, however, the Order issued this date does not direct SHU Nurse Jane Doe to file a response to Claim 2 at this time.  Mr. Casanova may file a motion for discovery needed for the purpose of identifying SHU Nurse Jane Doe, or Mr. Casanova may seek to amend the complaint to name SHU Nurse Jane Doe and join has as a defendant, in

accordance with any applicable rules or orders issued in this case.

    F.    Claims to Be Dismissed & Parties to Be Dropped

        1.    State of New Hampshire: 11th Am. Immunity

Mr. Casanova's initial pleadings, see, e.g., Doc. No. 16, seek damages from the State of New Hampshire. "Long interpreted as an affirmation of state sovereign immunity, the [Eleventh] Amendment . . . bars a citizen from bringing a federal court action against his or her own State, including instrumentalities of the state, such as state agencies." Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015) (citation, brackets, and quotation marks omitted). The Eleventh Amendment precludes Mr. Casanova's claims seeking to recover damages from the State of New Hampshire. Accordingly, the district judge should dismiss Mr. Casanova's claims naming the State of New Hampshire as a defendant, as well as his claims seeking damages from any defendant in his or her official capacity. Additionally, the State of New Hampshire should be dropped as a defendant.

        2.    Criminal Prosecution (Claim 7)

Mr. Casanova seeks to have defendants prosecuted for criminal acts. In general, a plaintiff does not have standing to bring claims of criminal misconduct in a civil case. See

Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Accordingly, the district judge should dismiss Mr. Casanova's claims seeking to charge defendants with criminal misconduct (Claim 7).

### 3.  SHU CO John Doe: Claim 5

In the allegations summarized and identified here as Claim 5, Mr. Casanova alleges that SHU CO John Doe left him in the bathroom for an extended period of time ("fifteen hours"), in violation of Mr. Casanova's Eighth Amendment rights.  Mr. Casanova's allegations summarized in Claim 5 in this R&R do not show that he was subjected to a substantial risk of serious harm by being left in the bathroom for the time period alleged. Moreover, Mr. Casanova has not asserted any factual allegations showing that SHU CO John Doe was subjectively aware of facts suggesting that leaving him in the bathroom for that time period would subject Mr. Casanova to such a substantial risk of serious harm.  Accordingly, without more, Mr. Casanova's assertion that he was left in a bathroom for fifteen hours does not state a claim upon which relief can be granted under 42 U.S.C. § 1983, and the district judge should dismiss Claim 5.

14

4. <u>Supervisory Defendants</u>

   a. <u>Denial of Grievances (Claim 6(a))</u>

In Claim 6(a), Mr. Casanova alleges that Commissioner Hanks and Director Mattis failed to grant his grievances seeking surgery for his back, waist, and spinal injuries in December 2021 and January 2022. Mr. Casanova has filed copies of his grievances and request slips asking for such surgery, as well as Director Mattis's response that the specialists who had examined him had not recommended surgery, and that no other providers had recommended surgery. Other documents filed by Mr. Casanova indicate that he: was receiving physical therapy in January 2022; had been prescribed pain relievers; and would be meeting with a health care provider to discuss his chronic back pain issues. Absent any further factual allegations demonstrating that Director Mattis or Commissioner Hanks were aware of and deliberately indifferent to any known risk of serious harm when they denied his grievances requesting surgery in December 2021-January 2022, Mr. Casanova has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983. Accordingly, the district judge should dismiss Claim 6(a).

   b. <u>Supervisory Authority (Claim 6(b))</u>

In Claim 6(b), Mr. Casanova asserts claims against Commissioner Hanks and Director Mattis based on their

15

supervisory authority over other defendants who Mr. Casanova alleges violated his Eighth Amendment rights.  "Generally, a supervisor cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory." Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021) (citations and brackets omitted).  Section 1983 liability "cannot rest solely on a defendant's position of authority."  Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014).  Accordingly, the district judge should dismiss Claim 6(b), and drop Commissioner Hanks and Director Mattis as defendants, as their positions of authority alone do not provide grounds for finding them liable for their subordinates' conduct.

## II.   Motions for Summary Judgment (Doc. Nos. 13, 24, 28)

Before the court are three filings entitled "Motion for Summary Judgment" (Doc. Nos. 13, 24, 28), which Mr. Casanova filed before this court completed its preliminary review of the complaint.  Those motions are premature as no defendant has been served, none have appeared, and none have had the opportunity to conduct discovery.  Accordingly, the district judge should deny the three motions for summary judgment (Doc. Nos. 13, 24, 28) without prejudice to plaintiff's ability to move for summary judgment at a later stage of this case.

16

**Conclusion**

For the foregoing reasons, the magistrate judge recommends that the district judge:

    1.   Dismiss Claims 5, 6(a), 6(b), and 7, and all claims asserted against the State of New Hampshire;

    2.   Drop DOC Commissioner Helen Hanks, DOC Medical and Forensics Director Paula Mattis, and the State of New Hampshire as defendants; and

    3.   Deny Mr. Casanova's three motions for summary judgment (Doc. Nos. 13, 24, 28), without prejudice, as premature.

Any objections to this R&R must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.

Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).  Any issues not preserved by such objection(s) are precluded on appeal.  See id.  Failure to file any objections within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                    */s/ Andrea K. Johnstone*
                                                    Andrea K. Johnstone
                                                    United States Magistrate Judge

Date:     February 28, 2022

cc:       Daniel Casanova, pro se