UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Daniel Casanova

    v.                                              Civil No. 21-cv-851-PB

N.H. State Prison Corrections Officer
FNU Ramos et al.


**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    This case arises out of an October 15, 2021 incident that occurred at the New Hampshire State Prison for Men ("NHSP") where pro se plaintiff, Daniel Casanova ("Casanova"), has been incarcerated. Casanova alleges that during the incident, Corporal Fernando Nunez ("Nunez"), a Corrections Officer ("CO") at the NHSP, pulled his feet out from under him and threw him to the ground while he was handcuffed, causing him to break his arm and sustain other serious injuries. He also alleges that in the immediate aftermath of the incident, two NHSP nurses, Keith Larocque ("Larocque") and Emma Pinard ("Pinard"), refused to provide him with adequate medical treatment for his pain and broken arm, and a second CO, Sergeant Brownlie ("Brownlie"), added to his injuries by twisting his arms while removing him from his cell, despite having knowledge of the plaintiff's physical condition. By his claims, Casanova is seeking to hold Nunez, Larocque, Pinard and Brownlie liable, pursuant to 42 U.S.C. § 1983, for violations of his Eighth Amendment rights. He is also seeking to hold Nunez liable for assault and for battery under New Hampshire state law.

    The matter is before the court on the defendants' "Motion for Summary Judgment (PLRA)" (Doc. No. 92) by which the defendants are seeking summary judgment on all of the plaintiff's claims against them on the grounds that Casanova failed to exhaust his administrative remedies

before filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For all the reasons described below, this court concludes that Casanova's failure to comply with the PLRA's exhaustion requirement warrants summary judgment in the defendants' favor with respect to the plaintiff's Eighth Amendment claims but that the motion should be denied with respect to the state law tort claims against Nunez for assault and for battery. Therefore, this court recommends that the defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART such that the motion be granted with respect to Casanova's federal claims but denied with respect to his state law claims.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party[.]'" Taite v. Bridgewater State Univ., Bd. of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (quoting Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018)). "[A] fact is 'material' if it 'has the potential of affecting the outcome of the case[.]'" Id. (quoting Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)). When ruling on a motion for summary judgment, the court must "view[] the entire record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that

---

[1] The court "may decline to exercise supplemental jurisdiction" over state law claims if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because it is unclear whether this court's original jurisdiction in this case is based solely on Casanova's federal claims or whether diversity jurisdiction might exist as well, this court cannot determine at this juncture whether the District Judge could decline to exercise jurisdiction over the assault and battery claims against Nunez. This court will direct the parties to address this issue, if appropriate, when the District Judge rules on this Report and Recommendation.

party's favor.'" Winslow v. Aroostook Cty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

If the party moving for summary judgment bears the burden of proof on an issue, that party "must provide evidence sufficient for the court to hold that no reasonable trier of fact could find other than in its favor." Am. Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008). The burden then "shifts to the nonmovant to establish that a genuine material dispute exists." Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 411 (1st Cir. 2015). To defeat summary judgment, "the nonmoving party must … 'set forth specific facts showing that there is a genuine issue for trial[.]'" Carrozza v. CVS Pharmacy, Inc., 992 F.3d 44, 56-57 (1st Cir. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Conclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact." Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (quoting Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)). In determining whether a trial-worthy issue exists, the court will consider "all of the record materials on file, including the pleadings, depositions, and affidavits[,]" but is not permitted to evaluate the credibility of witnesses or weigh the evidence. Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

## **RELEVANT BACKGROUND**

Casanova is a prisoner at the NHSP and was incarcerated there at all times relevant to this case. He filed this action on October 25, 2021, ten days after the incident giving rise to his complaint. Following a preliminary review of Casanova's initial pleadings, the court authorized service of the following claims:

1. On October 15, 2021, after striking the wall near Daniel Casanova's head and swearing at him, CO Ramos pulled Mr. Casanova's feet out from under him,

3

    while Mr. Casanova was handcuffed, and threw him to the ground forcefully, using excessive force against him in bad faith, maliciously or sadistically to cause harm, breaking Mr. Casanova's arm and causing other serious injuries:

       a. In violation of Mr. Casanova's Eighth Amendment rights, rendering CO Ramos liable under 42 U.S.C. § 1983; and

       b. Rendering CO Ramos liable under New Hampshire law for the intentional torts of (i) assault and (ii) battery.

2. On October 15, 2021, [Special Housing Unit ("SHU")] Nurse Jane Doe violated Casanova's Eighth Amendment rights, in that, with deliberate indifference to a substantial risk of serious harm, she refused his request for further medical attention and contributed to the delay in diagnosing and treating Mr. Casanova's fractured arm and severe pain, rendering her liable under 42 U.S.C. § 1983.

3. On October 17 and 18, 2021, Nurse Keith Larocque violated Daniel Casanova's Eighth Amendment rights, in that, with deliberate indifference to a substantial risk of serious harm, Nurse Larocque refused Mr. Casanova's request for further medical attention and contributed to the delay in diagnosing and treating Mr. Casanova's fractured arm and severe pain, rendering Nurse Larocque liable under 42 U.S.C. § 1983.

4. SHU CO John Doe violated Daniel Casanova's Eighth Amendment rights, in that, with deliberate indifference to a substantial risk of serious harm, SHU CO John Doe twisted Mr. Casanova's arms while removing him from his cell, knowing he was complaining of injuries and severe pain, on one or more occasions between October 15, 2021 and October 20, 2021, rendering that defendant liable under 42 U.S.C. § 1983.

See Doc. No. 30 at 5-6 (identifying claims); Doc. No. 43 at 2 (describing order to make service of claims identified as Claims 1-4). The parties subsequently determined that Nunez was the correct name of the CO described in Claim 1. See Doc. No. 74 ¶ 1. They also identified Pinard as the nurse described in Claim 2 and Brownlie as the CO described in Claim 4. See Doc. No. 53 ¶¶ 4-7; Doc. No. 70 ¶ 2. Accordingly, Casanova is seeking to hold Nunez, Pinard, Larocque and Brownlie liable under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights. He is also seeking to hold Nunez liable under state law for both assault and battery.

    During the course of the litigation, the parties produced documents relating to Casanova's

4

efforts to address his claims using the NHSP's administrative grievance system. In particular, the defendants produced copies of all of the available grievance records relating to Casanova's claims, including all Inmate Request Slips ("IRSs"), Medical Request Slips and Grievance Forms dated prior to December 31, 2021. See Doc. No. 58 at 2, Doc. No. 80 at 3-4. Additionally, Casanova produced various IRSs and Grievance Forms, both in connection with his responses to the defendants' Requests for Admissions and in various filings with the court. See Def. Ex. C;[2] Doc. No. 92-1 at 9 (describing plaintiff's production of grievance-related documents); see also, e.g., Doc. Nos. 1-3, 14, 16, 33, 46, 60, 63 & 87. The documents reveal that on October 18, 2021, Casanova submitted an IRS to "Nurse P. RiF" in which he complained, among other things, that Nunez had broken his bones on October 15, 2021, and that no one from the medical staff would assist him with his pain and injuries. See Def. Ex. C at Page 2 of 51.[3] They also indicate that while the plaintiff has submitted numerous IRSs and Grievance Forms to the Department of Corrections ("DOC") since the start of this litigation in which he has complained about the defendants' alleged misconduct, he did not file any Grievance Forms between the October 15, 2021 incident with Nunez and his filing of this lawsuit on October 25, 2021. See, e.g., id. at Pages 15-16, 23, 31 and 43 of 51; Doc. Nos. 1-3, 14, 60, 63, 87 & 99.

---

[2] "Def. Ex. C" refers to Exhibit C attached to the defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment found at Doc. No. 92-1 ("Defendants' Memorandum").

[3] Unless otherwise indicated, citations to page numbers in the defendants' exhibits refer to the court's CM/ECF numbering system at the top of the document.

In addition to producing documents, Casanova provided written responses to the defendants' Requests for Admissions.[4] See Def. Ex. A.[5] Therein, Casanova admitted that he did not complete the DOC's grievance process with respect to the conduct underlying his claims against Nunez, Pinard, Larocque and Brownlie.[6] Id. at Plaintiff's Responses to Matter Nos. 1-4. He also admitted that the October 18, 2021 IRS directed to "Nurse P. RiF" was the only IRS relating to his claims in this matter that he submitted prior to filing the instant lawsuit, and that the defendants had identified all of the IRSs and Grievance Forms that related to his claims against them. See id. at Plaintiff's Responses to Matter Nos. 5-8. Accordingly, the record establishes that all relevant IRSs and Grievance Forms have been produced in discovery. Notably, neither party has identified any Grievance Forms relating to the conduct underlying Casanova's claims in this matter that the plaintiff filed before initiating the present litigation.

## DISCUSSION

**I.    Exhaustion Under the PLRA**

The defendants argue that they are entitled to summary judgment on all of Casanova's claims because the plaintiff has failed to satisfy the PLRA's exhaustion requirement. The exhaustion provision of the PLRA provides that "[n]o action shall be brought with respect to prison

---

[4] Casanova did not sign his responses to the defendants' Requests for Admissions but he has not disavowed his responses or challenged the defendants' reliance on them.

[5] "Def. Ex. A" refers to Exhibit A attached to the Defendants' Memorandum.

[6] In their Requests for Admissions, the defendants instructed the plaintiff to admit, deny or admit in part each request for admission and to state the reasons for any denial or partial denial of a request. Def. Ex. A ¶¶ 3-4. Casanova both admitted and admitted in part each request for admission without providing further explanations for his responses. See id. at Plaintiff's Responses to Matter Nos. 1-8. Thus, he did not deny any of the defendants' requests for admission. See id.

conditions under [42 U.S.C. § 1983], or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Accordingly, there is no question that it applies to Casanova's claims against Nunez for excessive force and against Pinard, Larocque and Brownlie for deliberate indifference to a substantial risk of serious harm.  "There is [also] no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007).  If a prisoner fails to exhaust his administrative remedies before filing suit, any unexhausted claims must be dismissed.  See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002) (holding that dismissal was appropriate "[s]ince Congress clearly made the exhaustion of administrative remedies a necessary antecedent to filing a claim in federal court" under the PLRA).

"[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88).  Accordingly, "[p]roper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91 (footnote omitted).

A claim that a prisoner failed to exhaust administrative remedies "is an affirmative defense under the PLRA[.]" Jones, 549 U.S. at 216. Therefore, to prevail on their motion for summary judgment, the defendants "must show that no factfinder could reasonably conclude that plaintiff exhausted available remedies before filing suit." Burns v. Croteau, 561 F. Supp. 3d 164, 168 (D.N.H. 2020). For the reasons that follow, this court concludes that the defendants have met their burden with respect to Casanova's Eighth Amendment claims but have failed to show that they are entitled to summary judgment with respect to his claims for assault and for battery against Nunez.

## II.   The DOC's Grievance Policy

At the time of the events giving rise to this lawsuit, the DOC maintained a grievance policy consisting of a three-step administrative process through which prisoners confined in the NHSP could request a formal review of issues relating to any aspect of their confinement. See N.H. Code Admin. R. Cor ("Cor") 313.01.   That process is incorporated into New Hampshire's Administrative Rules, Department of Corrections, Chapter Cor 313.01 et seq. See Cor 313.04-313.06. The first step in the process requires the prisoner to submit a formal complaint in the form of an electronic request or an IRS to "the highest-level authority within a housing unit, or work area[.]" Cor 313.04(a) and (d). The electronic request or IRS must be submitted within 30 days after the incident giving rise to the prisoner's complaint and must contain enough information to enable a prison staff member to perform an investigation. Cor 313.04(f)-(g). As a general matter, an appropriate prison staff member must complete the investigation and respond to the formal complaint, in writing, within fifteen working days after it is received. See Cor 313.04(h)-(i) and (k)-(n). However, if the prisoner can demonstrate that the use of this procedure would likely result

in "a substantial risk of personal injury," or other serious harm, the prisoner is entitled to skip this step in the grievance process and proceed directly to the second step in the process. Cor 313.04(j).

If the prisoner is dissatisfied with the response to a formal complaint, he may elevate the complaint by filing a "Level I Grievance" with the appropriate warden, director, or administrator, as specified in the regulations. See Cor 313.04(n), 313.05(d). Ordinarily, Level I Grievances must be filed within fifteen days of the date of the response to the formal complaint. See Cor 313.05(c). Additionally, they must "be limited to one subject per grievance" and must contain enough information to allow for investigation. Cor 313.05(e) and (k). Unless the prisoner has obtained a waiver from the requirement to submit a formal complaint, he must demonstrate that the first step in the grievance process has been completed. See Cor 313.05(b). The warden, director or administrator must conduct any investigation and respond to the prisoner's grievance, in writing, within thirty days after receiving a Grievance Form. Cor 313.05(l), (p)-(q) and (s). A prisoner may skip this step in the process if the prisoner can demonstrate that using it would likely result in "identifiable risk or harm to his or her physical safety or psychological well-being." Cor 313.05(n).

A prisoner who is dissatisfied with the response at the second step in the grievance process may proceed to the final step in the three-step process by filing a "Level II Grievance." See Cor 313.05(s), 313.06. At this step, the prisoner must submit a Level II Grievance to the DOC Commissioner's Office within fifteen days following the date of the response to the Level I Grievance. See Cor 313.06(c) and (e). Unless the prisoner has been excused from the requirement to submit a Level I Grievance, he must demonstrate that the Level I Grievance process has been utilized and exhausted. See Cor 313.06(b). As in the case of Level I Grievances, Level II Grievances must "be limited to one subject per grievance" and must contain sufficient detail to allow for investigation. See Cor 313.06(d) and (k). The Commissioner's Office has thirty days

following its receipt of the Grievance to conduct any investigation and respond to the prisoner's complaint in writing.  See Cor 313.06(l)-(o).  In contrast to the earlier steps of the grievance process, there is no exception that allows the prisoner to skip or avoid this step.  See generally Cor 313.06.  Therefore, to fully exhaust administrative remedies with respect to a particular complaint, a prisoner in DOC custody must obtain a decision from the Commissioner of Corrections.  See Polansky v. McCoole, No. 13-cv-458-JL, 2016 WL 237096, at *4, 2016 U.S. Dist. LEXIS 6476, at **9-10 (D.N.H. Jan. 20, 2016) ("Until the Commissioner has responded to the grievance, the inmate has not fully exhausted all of his or her administrative remedies." (quoting Perfecto v. N.H. State Prison, Warden, No. 06-307-JL, 2008 WL 943372, at *3, 2008 U.S. Dist. LEXIS 29085, at *9 (D.N.H. Apr. 8, 2008)).

### III.     Casanova's Failure to Exhaust Administrative Remedies

The undisputed facts presented in this case demonstrate that Casanova failed to exhaust his administrative remedies before filing this lawsuit.  The undisputed evidence establishes that Casanova submitted only one IRS and no Level I or Level II Grievances during the period between the October 15, 2021 incident with Nunez and the filing of his complaint on October 25, 2021.  Consequently, there is no dispute that Casanova failed to complete all the steps available to him under the DOC's grievance process before bringing his claims to court.  Casanova admitted as much in his responses to the defendants' Requests for Admissions.

To the extent the plaintiff relies on the various IRSs and Grievance Forms he submitted after initiating this action, his efforts at exhaustion have come too late.  The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit."  Jones, 549 U.S. at 202 (emphasis added).  Because he failed to do so, Casanova's federal claims against the defendants cannot proceed.  See Ramirez v. Collier, 595 U.S. 411, 421 (2022) (ruling that prisoner could not

proceed with claims brought under federal law if he failed to exhaust all available administrative remedies). The defendants have thus shown that they are entitled to summary judgment with respect to Casanova's federal claims against them. See Hokenstrom v. N.H. Dep't of Corr., No. 14-cv-557-SM, 2016 WL 6989763, at *5, 2016 U.S. Dist. LEXIS 164282, at *15 (D.N.H. Nov. 8, 2016) (ruling that defendants were entitled to summary judgment on plaintiff's federal claims where, before he filed the lawsuit, "plaintiff had not exhausted the administrative remedies available to him for seeking a remedy for the conditions underlying his three federal claims.").

### IV.    Casanova's State Law Claims Against Nunez

This court cannot reach the same conclusion with respect to Casanova's state law claims against Nunez for assault and for battery. As described above, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Therefore, under the plain language of the statute, the exhaustion requirement is limited to the plaintiff's federal law claims. See Shaheed-Muhammad v. Dipaolo, 393 F. Supp. 2d 80, 92 n.5 (D. Mass. 2005) (rejecting defendants' contention that the PLRA's exhaustion requirement applies to state law claims based on the plain language of the statute). Additionally, the defendants have presented no arguments, and have cited no authority, suggesting that the requirement applies to state law claims. Accordingly, they have not shown that they are entitled to summary judgment with respect to those claims.[7]

---

[7] The defendants have not addressed the question whether summary judgment in their favor on Casanova's federal claims would deprive this court of original jurisdiction over the state law claims and, if so, whether the court should decline to assert supplemental jurisdiction over those claims. As indicated in footnote 1 supra, this court will direct the parties to address this issue, if appropriate, after the District Judge has ruled on this Report and Recommendation.

## CONCLUSION

For all the reasons detailed herein, this court recommends that the defendants' "Motion for Summary Judgment (PLRA)" (Doc. No. 92) be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned magistrate judge recommends that the motion be granted with respect to all of Casanova's federal claims against the defendants but denied with respect to his state law tort claims against Nunez.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the objection(s) to this Report and Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on appeal." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988)).

_____
Andrea K. Johnstone
United States Magistrate Judge

January 31, 2024

cc:  Daniel Casanova, pro se
     Counsel of record